**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

CHARLES BISER and
JANICE BISER,

                Plaintiffs,

v.                                                           CIVIL ACTION NO.   5:15-cv-15761

MANUFACTURERS AND TRADERS
TRUST COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *M&T Bank's Motion for Summary Judgment* (Document 37), *M&T Bank's Brief in Support of Its Motion for Summary Judgment* (Document 38), the *Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* (Document 43), and *M&T Bank's Reply Brief in Support of Its Motion for Summary Judgment* (Document 44). The Court has also reviewed the *Plaintiffs' Motion for Partial Summary Judgment* (Document 39), the *Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment* (Document 40), *M&T Bank's Opposition to the Plaintiffs' Motion for Partial Summary Judgment* (Document 42), and the *Plaintiffs' Reply to M&T Bank's Opposition to the Plaintiffs' Motion for Summary Judgment* (Document 49).   In addition, the Court has reviewed all attached exhibits. For the reasons stated herein, the Court finds that the Defendant's motion should be granted in part and denied in part, and the Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs, Charles and Janice Biser, initiated this action on November 2, 2015, by filing their complaint in the Circuit Court of Raleigh County, West Virginia.   Defendant Manufacturers and Traders Trust Company, D/B/A M&T Bank, removed the matter to federal court on the basis of diversity jurisdiction on December 2, 2015.   M&T Bank filed a motion to dismiss, and the Court entered a *Memorandum Opinion and Order* (Document 12) dismissing certain claims that fell outside the statute of limitations and dismissing a claim for intentional infliction of emotional distress.   The remaining claims are for violations of the West Virginia Consumer Credit and Protection Act (WVCCPA), common law negligence for negligent training or supervision, and common law invasion of privacy.

The Bisers purchased a home and acreage in Keyser, West Virginia, in 1999, with a loan in the amount of $185,000.00 from Keystone Financial, with an interest rate of approximately 9%. M&T Bank bought Keystone Financial in 2000 and took over the Bisers' loan.   The Bisers were required to maintain homeowner's insurance.   In 2009, the Bisers changed insurance companies and obtained a homeowners' insurance policy through State Farm Fire and Casualty Company. However, M&T Bank either did not receive notice of the coverage or disregarded the notice, and placed insurance coverage on the property.   The cost of the force-placed[1] insurance policy was added to the Bisers' account.   The parties dispute the facts surrounding the placement of the insurance coverage, the additional charges, and whether or when the charges were removed, but agree that those factual disputes regarding the alleged underlying debt are not material to the questions presented in this case regarding M&T Bank's debt collection activity.   M&T Bank

---

1 The Plaintiffs used the term "force-placed insurance" throughout to refer to insurance purchased by a lender when a homeowner fails to obtain home insurance as required by loan documents.

alleges that the Bisers were delinquent on payments from 2004 through the present.   Ms. Biser admits to making occasional late payments, but states that she has never missed a payment.   Ms. Biser believes that the discrepancy is a result of M&T Bank wrongfully adding charges for the unnecessary force-placed insurance, rather than showing her account as current following full payment of each monthly bill.

Ms. Biser recalls that M&T began calling her regarding the alleged delinquency in 2009, following the insurance coverage issue.   In the first phone calls, she was told the mortgage payments were late, and there were additional charges.   The Bisers worked with a local bank officer named Michael Landis, and went to him with any questions or concerns.   Ms. Biser stated that Mr. Landis attempted to straighten out the billing discrepancy leading to the phone calls, but the collection calls continued.   Mr. Landis confirmed that Ms. Biser talked to him about the phone calls and that he made calls to the corporate offices, but was unable to resolve the problem.   He does not recall the details or outcome of his conversations with the corporate office.   Ms. Biser found the calls to be harassing, obtained counsel, and informed the callers of his name, but the calls continued.[2]

Calls generally began around 9:00 a.m., and ended as late as 9:00 p.m.   No calls were made to Mr. Biser.   Calls were primarily placed to Ms. Biser's cell phone, though there were also calls placed to the Bisers' adult child.   Ms. Biser found some callers to be rude.   Several stated that they could call as much as they wanted in response to her complaints about the frequent phone calls.   One caller stated that the Bisers did not need all the land they owned.   Another stated that

---

[2] The Bisers' attorney is a long-time family friend who they view as a son. The exact date that his formal representation began is difficult to ascertain.   Call logs reflect that she informed M&T Bank of her representation in 2011, at the latest.

3

Ms. Biser did not really have a lawyer after Ms. Biser informed M&T Bank of her representation. Ms. Biser testified that one caller told her "that they probably threw [her] insurance paper in the trash because [she] had sent it to the wrong place."   (J. Biser Tr. at 77::19-22.)   In addition to the phone calls, M&T Bank sent delinquency and default letters.   She continued to make regular payments at her local bank.   The phone calls stopped around the time the lawsuit was filed, to the best of Ms. Biser's recollection.

There is dispute regarding the forms of notification the Bisers and their attorney sent to M&T Bank regarding the attorney's representation.   The Bisers provided a letter dated February 6, 2010, that identifies Trent Redman as their attorney and provides his telephone number.   M&T Bank disputes receipt of the letter.   (February 6, 2010 Letter, Document 43-6.)   They also attached a March 4, 2010 letter from Mr. Redman on his firm's letterhead, containing contact information, and notifying M&T Bank of his representation.   (March 4, 2010 Letter, Document 43-6.)   Mr. Redman wrote another letter, dated November 8, 2010, similarly providing his contact information, stating that continued calls to the Bisers were in violation of the WVCCPA, and threatening to bring suit.   (November 8, 2010 Letter, Document 43-6.)   M&T Bank responded to a facsimile from Mr. Redman on March 25, 2015.    It indicates that Mr. Redman's facsimile was the first time he communicated with M&T Bank regarding the insurance charges.   (March 25, 2016 Facsimile, Document 43-6.)   M&T Bank contends that it was not provided with Mr. Redman's name, the name of his firm, or his phone number until June 15, 2013.

The call log maintained by M&T Bank includes notes on calls from 2011 through 2016. Beginning in April 2011 (the earliest calls included on the log produced herein), the log reflects Ms. Biser's statements to M&T Bank's representatives that she had an attorney handling the

4

payment dispute.[3]   According to M&T Bank's 30(b)(6) witness, Joseph Morrison, all phone calls are made by M&T employees.   The Plaintiff's summary of the call log as to calls placed between November 8, 2011, and March 11, 2016, reflects 65 calls placed to Ms. Biser that were not answered, 56 call notes mentioning that Ms. Biser referenced an attorney, and 113 calls that Ms. Biser answered, but where the call notes do not record mention of an attorney.   Mr. Morrison testified that if the call center were notified of the attorney and attorney's name, "[t]he process would have been to ask the customer to have their attorney contact us to discuss the matter at hand."   (J. Morrison Depo. at 34::9–16.)

Ms. Biser stated that she found the calls stressful.   Both she and Mr. Biser suffer several health problems.   Mr. Biser has a history of heart problems and has lost a significant amount of weight since worries about the dispute with M&T increased.   Ms. Biser started on high blood pressure medication after the collection calls began.   Ms. Biser attributes her husband's loss of interest in their farm to the stress of the debt collection activity.   However, neither has discussed the situation with their doctors, and no medical professional has attributed any condition to stress from M&T Bank's collection activity.   Ms. Biser also testified she gets stressed and short-tempered as a result of the debt collection calls and fear of losing her home, which has caused strain in the marriage.   Both Mr. and Ms. Biser stated that Ms. Biser handled the phone calls and loan payments herself and tried not to discuss it in any detail with Mr. Biser, in an effort to protect him from the stress.   Mr. Landis likewise testified that Ms. Biser appeared upset and stressed when she discussed the collection calls with him at the bank.

---

3  The Plaintiffs have also provided a Loan Activity report, which includes a collection note dated January 28, 2009, that reads "DO NOT CALL *** ATTY HNDNG TRENT REDMON."   (Loan Activity report, Document 40-1.) However, the Defendant's 30(b)(6) witness asserts that the date is misleading, and the collection note with the attorney information was actually added in 2015.

With the help of Mr. Landis, Ms. Biser attempted to refinance to reduce her interest rate. However, Ms. Biser's credit score was too low to qualify.   Ms. Biser's credit report includes her payment history with M&T Bank.   M&T Bank reported her payments as "ok" or on time for some months, and 30 days late for others.   The reported late payments reduced Ms. Biser's credit score. Ms. Biser did not believe she suffered monetary damages due to the debt collection activities, other than the late fees and slightly higher payments she made at times in an effort to correct the problem.

M&T Bank filed its motion for summary judgment on July 20, 2016.   The Bisers filed their motion for partial summary judgment on the same date.   Both parties filed their respective responses on August 3, 2016, and replies were filed on August 10, 2016.   Both motions are ripe for review and ruling.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

6

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."   *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."   *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility.   *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012).   Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

M&T Bank seeks summary judgment on all counts.   It argues that the invasion of privacy claim must fail because the Bisers have not produced evidence that the phone calls on which the claim is premised were highly offensive.   M&T Bank next asserts that the WVCCPA claims must fail because the Bisers cannot demonstrate that direct calls were made after written notice of attorney representation was provided to M&T Bank's registered agent for service, or that M&T Bank made the number of calls required for liability under the 2015 amendments to the statute. M&T Bank asserted that the 2015 amendments were clarifications, rather than substantive changes, and thus apply retroactively.   M&T Bank further contends that the Bisers' claim for negligent supervision cannot survive in the absence of the WVCCPA claims.   Finally, M&T Bank asserts that the Bisers' allegations of damages are insufficient to support recovery for the negligent supervision claim.

The Bisers respond that the 2015 amendments to the WVCCPA are not applicable.   Under the previous version of the law, they argue that they are entitled to summary judgment on their

claims under W. Va. Code § 46A-2-128(e), because the undisputed facts establish that M&T Bank continued to call them directly after being informed that they were represented by counsel.   They assert that the volume of calls made (a) after notice of attorney representation and (b) after notice of the insurance on the property, constitutes continuous and repeated calls made "with the intent to annoy, abuse, oppress or threaten," in violation of W.Va. Code § 46A-2-125(d).   They seek summary judgment as to liability for three WVCCPA claims for each of 234 calls made after M&T Bank had been notified of the Bisers' representation.   In response, M&T Bank argues that even if the pre-2015 version of the WVCCPA applies, summary judgment is precluded by factual disputes regarding, *inter alia*, when the Bisers provided their attorney's name and contact information and how many calls were successfully placed.   The Bisers reply that the number of calls can be ascertained by counting the entries on the M&T Bank's call log, and emphasize that calls are to be counted whether they were answered or not.

### A.  Retroactivity of WVCCPA Amendments

Before evaluating the evidence with respect to the WVCCPA claims, it is necessary to determine which version of the statute is applicable.   West Virginia's governor, Earl Ray Tomblin, signed the WVCCPA amendments into law on March 31, 2015, and the amendments took effect on June 12, 2015.   Certain provisions not relevant to this motion include language specifying that those provisions apply to actions filed on or after September 1, 2015.   The collection calls challenged by the Plaintiffs were made prior to the effective date of the amendments.

The sections of the WVCCPA relevant to this case are West Virginia Code § 46A-2-128(e) and § 46A-2-125(d).   Prior to the 2015 amendment, § 128(e) prohibited:

9

Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

The amended version prohibits:

Any communication with a consumer made more than seventy-two hours after the debt collector receives written notice, either on paper or electronically, from the consumer or his or her attorney that the consumer is represented by an attorney specifically with regard to the subject debt. To be effective under this subsection, such notice must clearly state the attorney's name, address and telephone number and be sent to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State or, if not registered with the West Virginia Secretary of State, then to the debt collector's principal place of business. Communication with a consumer is not prohibited under this subsection if the attorney fails to answer correspondence, return phone calls or discuss the obligation in question, or if the attorney consents to direct communication with the consumer. Regular account statements provided to the consumer and notices required to be provided to the consumer pursuant to applicable law shall not constitute prohibited communications under this section.

The pre-amendment version of § 125(d) prohibits:

Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

The amended version prohibits:

Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number. In determining whether a debt collector's conduct violates this section, the debt collector's conduct will be evaluated from the standpoint of a reasonable person. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the

10

> convenient time for communicating with a consumer is after eight o'clock antemeridian and before nine o'clock postmeridian, local time at the consumer's location.

The preface to the amended statute describes the bill as "an act to amend and reenact" certain provisions of the WVCCPA, and states that the changes "all relat[e] to clarifying permitted and prohibited actions…."   DEBT COLLECTION, 2015 West Virginia Laws Ch. 63 (S.B. 542).

As a general rule, retroactivity is disfavored.   *Landgraf v. USI Film Prod.*, 511 U.S. 244, 264 (1994).   A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."   *Id.* at 280.   In West Virginia, "[a] statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute…unless the statute provides explicitly for retroactive application." Syl. pt. 2*, Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 480 S.E.2d 538, 540–41 (W. Va. 1996); *see also* W. Va. Code § 2-2-10(bb) ("A statute is presumed to be prospective in its operation unless expressly made retrospective.").   Further, "[t]he presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect."   Syl. pt. 3, *Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807, 810 (W. Va. 2002) (internal quotation marks omitted).   While procedural and remedial provisions may be applied retrospectively without explicit legislative language to that effect, "[i]f a new procedural or remedial provision would, if applied in a pending case, attach a new legal consequence to a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply."   *Pub. Citizen Inc.*, 480 S.E.2d at 544.

The Court notes that, although the issue presented involves the West Virginia Legislature's amendment to a West Virginia statute, both parties have relied primarily on decisions by federal courts considering the retroactivity of federal statutes.   The Court notes the end result would be the same under either line of case law.   However, it appears that the West Virginia Supreme Court of Appeals has adopted a standard that is less deferential to a legislature's characterization of an amendment as a 'clarification' than the Fourth Circuit.   *Compare Findley*, 576 S.E.2d at 819–20 (finding that an amendment that the legislature described as a clarification intended to reverse a misinterpretation by the court was prospective because retroactive application would "extinguish any litigable rights that have accrued as a result of this Court's holding" in the case that prompted the amendment) *with Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) (relying on Congress's description of amendments as clarifying and technical).   The Fourth Circuit has, in other circumstances, recognized that the characterization of an amendment is not dispositive. *United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995) (noting the "need to look to the amendment's purpose and effect" rather than relying on the Commission's characterization in considering whether an amendment to the United States Sentencing Guidelines was retroactive).

In this case, the Legislature did not expressly direct that the amendments be given retroactive effect, and it is clear that the changes substantively alter the legal implications of events completed prior to the amendment's effective date.   The West Virginia Legislature's statement that the amendments "clarify[] prohibited and permitted actions" cannot outweigh the effect or circumstances of the amendments.   DEBT COLLECTION, 2015 West Virginia Laws Ch. 63 (S.B. 542).   Unlike *Brown*, there were no contradictory court decisions resolved by the amendments.   The original WVCCPA language was broad, but clear.   *See Brown*, 374 F.3d at

259, note 2 ("We note that even if Congress had given no direct indication that it intended [the amendment] to be clarifying, courts regularly view a conflict in courts with regard to the proper interpretation of a statute—as existed…here—as an indication that Congress passed a subsequent amendment to clarify rather than change existing law.")   The amendments do provide clarity in one sense: they provide bright line rules for debt collectors, rather than broad remedial standards under which a jury considers the totality of the conduct and circumstances in applying the law. Those bright line rules are, however, a substantive departure from the prior version of the law.[4]

Section 128(e)'s bar on direct communication "whenever it appears that [a] consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained," was never interpreted to require written notice of representation to the debt collector's registered agent, and could not have reasonably been so interpreted.   Under the pre-amendment version of the law, consumers invoked the protections of Section 128(e), as Ms. Biser did, simply by telling the debt collector that they had obtained counsel.   No consumer or attorney would have considered it necessary or prudent to provide written notice to the debt collector's registered agent prior to the amendment.   Applying the amended version retroactively would have the effect of removing the protection entirely for consumer calls placed prior to the amendment and not yet fully litigated, because consumers and attorneys relying on the language in effect at

---

4 Several law firms and other organizations representing debt collectors and banks published brief articles following passage of the amendments, describing them as "significant changes" or "dramatic revisions."   *See, e.g.*, John C. Lynch et al., *WVCCPA Amendments Signed into Law by Governor Tomblin*, Troutman Sanders (April 3, 2015), http://www.troutmansanders.com/wvccpa-amendments-signed-into-law-by-governor-tomblin-04-03-2015/;   *West Virginia Consumer Credit Protection Act Amendments*, McGuire Woods (June 22, 2015), https://www.mcguirewoods.com/Client-Resources/Alerts/2015/6/West-Virginia-Consumer-Credit-Protection-Act-Amendments.aspx; Sean R. Higgins, et al., *Governor Tomblin Signs into Law Significant Amendments to West Virginia Consumer Credit Protection Act*, K&L Gates (May 12, 2015), http://www.klgates.com/governor-tomblin-signs-into-law-significant-amendments-to-west-virginia-consumer-credit-protection-act-05-12-2015/;   *2015 Legislative Wrap Up: A Great Session for Bankers*, Community Bankers of West Virginia, http://wvacb.com/wp-content/uploads/2014/11/2015-Legislative-Wrap-Up.pdf.

13

the time of the calls would not have taken the specific additional steps required by the amendment. This amendment cannot be said to merely "make what was intended all along even more unmistakably clear."   *Brown*, 374 F. 3d at 259 (quoting *United States v. Montgomery County,* 761 F.2d 998, 1003 (4th Cir.1985)).

Taken as a whole, the amended WVCCPA cannot be considered a clarification, and the Legislature did not include language specifying that it should be applied retroactively.   The Court has already addressed § 128(e).   The same result applies to § 125(d), if considered independently. The prior version of that section contained broad (but unambiguous) language barring debt collectors from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously…with the intent to annoy, abuse, oppress, or threaten…."   The amended version specifies particular hours presumed to be convenient and precise numbers of telephone calls that may be made and conversations that may be engaged in.   Once again, the amendment does not resolve ambiguity or contradictory interpretations.   Instead, it substantively changes the statute.   Rather than a jury considering whether the facts as a whole show that the debt collector called repeatedly or continuously, as those terms are normally defined, with the intent to annoy, abuse, oppress, or threaten, the court or jury will now simply add up the number of calls made in a specified time period.   In the instant case, for example, the fact that debt collection calls were made regularly for several years is an appropriate factor for consideration under the version of the statute in effect when the calls were made, but would be of no consequence under the amended statute.   Because the changes were substantive rather than mere clarification, the amendments apply prospectively in the absence of clear legislative direction to the contrary.

B.  *WVCCPA Violations*

Having found that the pre-amendment version of the WVCCPA is applicable to the Bisers' claims, the Court must now consider whether either party is entitled to summary judgment.   M&T Bank does not argue that it would be entitled to summary judgment absent the amendments, except as to any claim for cancellation of the secured debt, and the Court finds that the Bisers have presented ample facts to preclude summary judgment against them as to their claims under Sections 128(e) and 125.

The Bisers seek summary judgment in their favor as to their claims under these provisions. It is clear that they are entitled to recover for calls placed to them after M&T Bank was (a) informed that they had an attorney and (b) could have easily ascertained the attorney's name and address. The Bisers emphasize that the call logs maintained by M&T Bank include repeated notes referencing counsel.   However, the first note the Court could find that includes the attorney's name is on July 3, 2013.   The first call log note that references an attorney is dated April 9, 2011. It is possible that Ms. Biser did provide the attorney's name and/or contact information, with or without prompting, in that call, in an earlier call not included in the call log, or in any of the several calls mentioning an attorney between April 2011 and July 2013.[5]   There is also dispute between the parties regarding the significance of a collection note dated January 28, 2009, that includes the attorney's name, which M&T Bank contends was actually entered in 2015.   In addition, the

---

5 The Court notes that the Plaintiffs state in their reply brief that "Defendants turned over audio recordings from seventeen of the two hundred thirty-four calls made to the [Plaintiffs].   In fifteen of the calls, the Bisers inform M&T they are represented by Trent Redman."   (Pls.' Reply at 5.)   The statement by counsel in a brief does not constitute evidence for purposes of summary judgment, however, and the Court is still left without a firm date on which the Bisers informed M&T Bank of their attorney's identity.   That date may not be dispositive at trial.   Even if a jury concludes that the first time Ms. Biser told a caller her attorney's name was in July 2013, it could find that the information was "easily ascertainable" by simply asking Ms. Biser for her attorney's contact information.   That, however, is a determination for the jury.

evidence produced includes several 2010 letters from the Plaintiffs and their counsel, which M&T Bank contends it has no record of receiving.

Without more details of the content of the previous calls, the Court cannot determine the date on which M&T Bank could have easily ascertained the attorney's name and address.   Given the factual disputes and lack of clarity regarding when the Bisers provided M&T Bank with the requisite information, the Court finds that the Plaintiffs have not met their burden of demonstrating that they are entitled to summary judgment for all calls placed within the timeframe of the statute of limitations.

Factual questions remain with respect to the Bisers' claims under § 125 as well.   Section 125 contains a general prohibition on unreasonably oppressive or abusive debt collection activity, and includes subsections listing specific conduct that constitutes a violation.   Section 125(d) bars repeated or continuous calls or calls at unusual times or times known to be inconvenient.   Courts in this district have granted summary judgment to debt collectors on Section 125 claims where twenty-seven, twenty-one, or thirty-five collection attempts were made over a course of several months, during daytime hours and with no abusive language or other aggravating factors.   *See Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 502 (S.D.W. Va. 2014) (Faber, J.); *White v. Ally Fin. Inc.,* 2:12–cv–00384, 2013 WL 1857266 (S.D.W.Va. May 2, 2013) (Goodwin, J.); *Adams v. Chrysler Fin. Co., LLC,* 5:11–cv00914, 2013 WL 1385407 (S.D.W.Va. Apr. 3, 2013) (Berger, J.)   The Plaintiffs cite no case law suggesting that summary judgment in favor of a plaintiff is appropriate at some threshold number of calls, and the Court is unaware of any such precedent.

As discussed in part above, a jury may consider the totality of the circumstances surrounding the debt collection efforts to determine whether they are unreasonably oppressive or abusive.  The Court declines to adopt the Bisers' position that calls placed after notice of an attorney constitute a *per se* violation of § 125 as well as § 128(e).  A jury may consider the notification of representation, the circumstances surrounding the force-placed insurance, the fact that the calls persisted for several years, the content of the calls, the timing of the calls, the frequency of the calls, and any other relevant evidence, to determine how many, if any, calls violated § 125, and/or § 125(d) specifically.  Such factual determinations and inferences are within the province of the jury.   Therefore, the Court finds that the Plaintiffs' motion for summary judgment on the WVCCPA claims must be denied.

However, to the extent the Bisers seek cancellation of their indebtedness under W. Va. Code § 46A-5-105, the Court finds that M&T Bank is entitled to summary judgment.  Section 46A-5-105 provides for cancellation of a debt "[i]f a creditor has willfully violated the provisions of this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice," but such relief is available only "when the debt is not secured by a security interest."   M&T Bank has provided an affidavit by Mr. Morrison stating that M&T Bank "maintains an executed Deed of Trust in the Biser Loan File" which "secured the Biser Loan and encumbers the Bisers' property."   (J. Morrison Aff. at ¶¶ 7–8.)   The Bisers have not challenged that evidence or produced any contrary evidence suggesting that the property is not secured.  Accordingly, the Defendant's motion for summary judgment as to the Plaintiffs' claim for cancellation of indebtedness under W. Va. Code § 46A-5-105 should be granted.

### C. Negligent Training and Supervision

M&T Bank seeks summary judgment on the negligent training and supervision claim, both based on its position that the underlying WVCCPA claim is not viable, and on the asserted lack of damages.  The Court has found that M&T Bank is not entitled to summary judgment on the WVCCPA claims.  Thus, the only question to resolve is whether the Bisers have put forth adequate evidence of damages to permit their negligence claim to proceed.

The basic elements of any negligence claim are duty, breach of that duty, causation, and damages.  "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another."  *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 817–18 (S.D.W. Va. 2012) (Copenhaver, J.).  Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised. *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000).

The Bisers did not provide briefing on this issue, but did produce some evidence of damages.  Ms. Biser testified that she paid some late fees and made some higher payment in an attempt to stop the debt collection calls, but did not otherwise believe she and Mr. Biser suffered financial damages.  In addition, there was evidence that her credit score was reduced as a result of M&T Bank's reports of late payments, which prevented the Bisers from refinancing their home at a more favorable interest rate.[6]  Ms. Biser also testified that she believed that both she and her

---

6  The Court notes that M&T Bank has filed a motion in limine seeking to bar introduction of evidence related to credit reporting and associated damages.  The Court will address that motion prior to trial, and expresses no opinion as to its likely outcome.

husband had health problems that were exacerbated by stress related to the debt collection calls, but that they had never discussed the calls with a medical provider.   However, the Bisers have failed to connect any of those damages to negligence by any employee(s), much less negligent training or supervision of any employee(s).   As damages and causation are essential elements of a negligence claim, the Plaintiffs' failure to produce any evidence of damages resulting from negligent training or supervision is dispositive.   Therefore, the Court finds that the Defendant's motion for summary judgment as to negligent training and supervision should be granted.

### A.   Invasion of Privacy

M&T Bank argues that the Bisers' invasion of privacy claim cannot be sustained solely on the basis of the telephone calls, absent aggravating factors that suggest an intention to invade their privacy.

In West Virginia, "an unreasonable intrusion upon the seclusion of another" is a category of invasion of privacy.   Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74 (W. Va. 1983); Syl. Pt. 6, *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 461 (W. Va. 2014). Courts in West Virginia have generally adopted the Restatement (Second) of Torts § 652B for claims of intrusion upon seclusion.   *See, e.g.*, *Ghafourifar v. Cmty. Trust Bank, Inc.*, No. 3:14-CV-01501, 2014 WL 4809782, at *14 (S.D.W. Va. Aug. 27, 2014) (Eifert, M.J.) *report and recommendation adopted*, No. 3:14-CV-01501, 2014 WL 4809794 (S.D.W. Va. Sept. 26, 2014); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 508 (S.D.W. Va. 2014) (Faber, J.); *Harbolt v. Steel of W. Virginia, Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W. Va. 2009) (Chambers, J.). The Restatement provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other

19

for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
Restatement (Second) of Torts § 652B (1977).   Comment b(5) of the§ 652B of the Restatement
suggests that harassing phone calls can support an invasion of privacy claim based on intrusion on
seclusion.[7]   However, courts in this district have required plaintiffs to offer "citations to the
record" and "proof of damages" to defeat a motion for summary judgment in similar cases.
*Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 819 (S.D.W. Va. 2012)
(Copenhaver, J.); *see also Adams v. Chrysler Fin. Co., LLC,* No. 5:11-CV-00914, 2013 WL
1385407, at *9 (S.D.W. Va. Apr. 3, 2013) (Berger, J.) (granting summary judgment on invasion
of privacy claim, noting that "Plaintiffs do not offer evidence that the phone calls were made within
a short time frame or that they were placed at inappropriate hours").

M&T Bank points to Ms. Biser's testimony that no calls were placed late at night or early
in the morning, and that the callers did not use obscene or threatening language.   It further notes
that it did not place more than five calls per week.   The Bisers did not address the motion for
summary judgment as to invasion of privacy in their briefing.   Absent evidence of repeated calls
within a short time, calls at inappropriate hours, offensive language, or any other factor indicating
an intent to intrude on the Bisers' privacy, the Court finds that the Plaintiffs have not met their
burden of offering concrete evidence that could support a favorable verdict.   Viewing the
evidence and inferences in the light most favorable to the Plaintiffs, the Court finds that there is

---

7 That example provides in full:

A, a professional photographer, seeking to promote his business, telephones B, a lady of social
prominence, every day for a month, insisting that she come to his studio and be photographed. The
calls are made at meal times, late at night and at other inconvenient times, and A ignores B's requests
to desist. A has invaded B's privacy.

no dispute as to any material fact, and the Defendant is entitled to summary judgment as to the invasion of privacy claim.

## CONCLUSION

WHEREFORE, following thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Partial Summary Judgment* (Document 39) be **DENIED**, and that *M&T Bank's Motion for Summary Judgment* (Document 37) be **GRANTED IN PART and DENIED IN PART.**   Specifically, the Court **ORDERS** that M&T Bank's motion be **GRANTED** as to Count II – common law negligence, Count IV – invasion of privacy, and as to the Plaintiffs' claim for cancelation of their debts, and **DENIED** as to all remaining counts.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    September 29, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

21